Civil Appeal Case No. 24-1070

_____

# United States Court of Appeals for the Fourth Circuit

_____

**Michael O. Livingstone**

*Plaintiff-Appellant*

**v.**

**Walden University, LLC.**

*Defendant-Appellee*

_____

**On Appeal from the United States District Court for the
District of Maryland (Baltimore)
Civil Case 1:22-cv-03096-BAH, Honorable Brendan Abell Hurson
from the final order entered on December 20,2023**

_____

APPELLANT'S INFORMAL BRIEF
With
APPENDIX VOLUME I of I (separate)

_____

By:
Michael O. Livingstone,
Plaintiff-Appellant, *Pro se*
P.O. Box 34246
Philadelphia, Pennsylvania 19101.

Dated: May 8, 2024

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. **24-1070** _Civil_   Caption: **Livingstone v. Walden University, LLC**

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____MICHAEL O. LIVINGSTONE, Pro Se_____
(name of party/amicus)

_____

who is **APPELLANT**_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☒ NO

2.   Does party/amicus have any parent corporations?   ☐ YES ☒ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☒ NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☒NO
     If yes, identify entity and nature of interest:


5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☒NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:


6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☒NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.


7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☒NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.


Signature: _____        Date: _March 5, 2024_

Counsel for: _____

Print to PDF for Filing

# TABLE OF CONTENTS

Page Nos.

DISCLOSURE STATEMENT……………………………………..…………Appended

APPENDIX VOLUME I OF I……………………………………………….Separate filed

TABLE OF AUTHORITIES…………………………………………………… ….iii-vii

READER'S GUIDE TO PAGE NUMBER REFERENCES
& CITATIONS IN THIS BRIEF……………………………………………………viii

I.      STATEMENT REGARDING ORAL ARGUMENT……………………………..1

II.     JURISDICTIONAL STATEMENT……………………………………………...1

III.    STATEMENT OF TWO ISSUES PRESENTED FOR APPELLATE REVIEW………..2

IV.     STATEMENT OF RELATED CASES & PROCEEDINGS……………………...2

V.      STATEMENT OF THE CASE……………………………………………...…..2-7

VI.     SUMMARY OF ARGUMENT……………………………………..………..7-8

VII.    ARGUMENTS ……………..……………………………….………...8-30

      **A)** Legal Standards of Review…………………………………………...…8-11

      **B)** Legal Arguments in Support of Issue No. 1 presented for review………….......11-29

            WHETHER the District Court erred or abused its discretion when it granted Defendant's motion to dismiss *pro se* Plaintiff's civil rights complaint under Federal Rules of Civil Procedure 12(b)(1) without leave to amend; without prejudice; without separately assessing statutory standing, injury, and Article III standing under every specific cause of action in the amended complaint with applicable choice-of-law analysis.

    1) Omission of crucial facts in the District Court's opinion:
       Walden's $5000 refund offer as settlement consideration
       was not a refund because it was a student loan refund to be
       repaid to the US. Department of Education loan servicer.
       Federal student Loan cannot be used for private settlement consideration…...12-14

    2) The district court failed address *proximate cause* in the Article III injuries…..14-16

3) District Court over-generalized the injuries instead of
Separately assessing the injuries under each Count or
statute of the operative complaint……………………………….……16-17

4) This Circuit Court can address issues that the district court
failed to address by applying the "principle of party presentation"………..…17-18

5) District Court abused its discretion when it failed to assess injury
Separately under choice-of-law diversity jurisdiction of state laws
in the operative complaint…………………………………………………..18-19

6) District Court never addressed informational injury at all………………....19-21

7) Prejudice to Plaintiff with reference to Plaintiff's

previous *Osei* case with error……………………………………….………21-23

8) District court abused its discretion when it
failed to grant leave to amend civil rights complaint…………………………23-25

9) It negates well-established Fourth Circuit Policy if this
Circuit Court Does Not Reverse the District Court's Denial…………………25-27

10) Plaintiff's request for leave to amend the
Complaint falls within "Amendment as of right" stage…………………………27

11) "Justice So Requires" Leave to Amend the operative Complaint.
Leave to Amend was not "freely given" despite the dictum of the
United States Supreme Court to freely-give leave to amend…………………..27

12) No Factor Militating Against Leave to Amend Is Present.
Futility is misplaced……………..…………………………………….………28-29

**C)** Legal Arguments & Discussions In Support Of Issue No.2………………….…...29

WHETHER the District Court erred or abused its discretion
when it failed to address Plaintiff's statutory and common
law retaliation claims under COUNT ELEVEN and
COUNT FOURTEEN of Plaintiff's Amended Complaint (ECF No.20)

VIII.  CONCLUSION………………………………………………………………..30

IX.  RELIEFS REQUESTED……………………………………………………..30

X.  CERTIFICATION OF COMPLIANCE WITH WORD COUNT………………...30(a-b)

XI.     CERTIFICATE OF SERVICE……………………………………………………...30 (c)

## **TABLE OF AUTHORITIES**

Page Nos.

### **Cases**

*Achacoso- Sanchez v. Immigration & Naturalization Serv.*,
    779 F.2d 1260, 1265 (7th Cir. 1985)………………………………………………....9
*Cheney v. Anchor Glass Container Corp*.,
    71 F.3d 848, 850 (11th Cir.1996)…………………………...…………………9
*Adams v. Bain*,
    697 F.2d 1213, 1219 (4th Cir. 1982)…………………………………………………..8
*Anderson v. Hardman,*
    241 F.3d 544, 545 (7th Cir. 2001)…………………………………………………10
*Whitford v. Boglino*,
    63 F.3d 527, 535 n.10 (7th Cir. 1995)……………………………….…………..10
*Anza v. Ideal Steel Supply Corp*.,
    547 U. S. 451, 456 (2006) at 458………………………………………………....15
*Arcadia v. Ohio Power Co.,*
    498 U.S. 73, 77 (1990)……………………………………………………………...18
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)………………………………………………………………9
*Assoc. of Am. Med. Coll. v. United States,*
    217 F.3d 770, 778 (9th Cir. 2000)………………………………………………10
*Barefoot Architect, Inc. v. Bunge,*
    632 F.3d 822, 835 (3d Cir. 2011)…………………………………………………12
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)………………………………………………………………..9,10
*Britt v. DeJoy*,
    No. 20-1620, 2022 WL 3590436 (4th Cir. Aug. 17, 2022) (en banc) at 4………………..8
*C.R.M. v. United States*,
    Case No. 1:20-cv-00404 (AJT/IDD) (E.D. Va. Aug. 20, 2020)…………………...…14
*Carney v. Adams*,
    141 S. Ct. 493, 498 (2020)…………………………………………………………...11
*Carroll v. Walden Univ.*,
    CIVIL 1:22-cv-00051-JRR, 24 (D. Md. Nov. 28, 2022) …………………………….4, 21
        *Clinton v. Jersey City Police Dep't.,*
    2017 WL 1024274, at *2 (D.N.J. Mar. 16, 2017) (Cecchi, J.)…………………………..26
*Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*,
    Civil Action 2:21-cv-42-RMG, 6-7 (D.S.C. Dec. 10, 2021)…………………………815
*Commonwealth v. Widmer*,
    560 Pa 308, 744 A.2d 745 (Pa.2000) …………………………………………………..9
*Cooksey v. Futrell*,
    721 F.3d 226, 234 (4th Cir. 2013)……………………………………………...…8

*Coral v. Gonse,*
    330 F.2d 997, 998 (4th Cir. 1964)……………………………………………………27

*Davenport v. Ralph N. Peters & Co.,*
    386 F.2d 199, 204 (4th Cir. 1967)……………………………………………………25

*Del Sontro v. Cendant Corp., Inc.,*
    223 F.Supp.2d 563, 576 (D.N.J. 2002)……………………………………....26

*Demmick v. Cellco P'ship,*
    2008 WL 750547, at *1 (D.N.J. Mar. 19, 2008) (Cecchi, J.)…………………………26

*Edwards v. City of Goldsboro,*
    178 F.3d 231, 242 (4th Cir. 1999)……………………………………………………28

*Equal Emplymt. Oppor. Comm'n v. Concentra Health Svcs., Inc.,*
    496 F.3d 773, 776 (7th Cir. 2007)……………………………………………9-10

*Estrella v. Wells Fargo Bank, N.A.,*
    497 Fed. App'x. 361, 362 (4th Cir. 2012)……………………………………………21

*Evancho v. Fisher,*
    423 F.3d 347, 350 (3d Cir. 2005)……………………………………………….8

*Sosebee v. Astrue,*
    494 F.3d 583, 586 (7th Cir. 2007) at 586……………………………………...8

*Fed. Election Comm'n v. Cruz,*
    142 S. Ct. 1638, 1647 (2022)……………………………… ………………...12

*Warth v. Seldin,*
    422 U.S. 490, 500 (1975)…………………………………………………...12

*Federal Election Commission v. Akins,*
    524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)……………………………...20

*Flagg v. Essex Cnty. Prosecutor,*
    171 N.J. 561, 571 (2002)…………………………………………………...9

*Forman v. Davis,*
    371 U.S. 178, 182 (1962)…………………………………………………..25,26

*Fowler v. Butts,*
    229 F.3d 788 (7th Cir. 2016)……………………………………………..9,22

*Fowler v. UPMC Shadyside,*
    578 F.3d 203, 210 (3d Cir. 2009)…………………………………………. ..9

*Galustian v. Peter,*
    591 F.3d 724, 729 (4th Cir. 2010)……………………………………………25

*Galustian v. Peter,*
    591 F.3d 724, 729 (4th Cir. 2010)……………………………………………27

*Gordon v. Dailey,*
    2017 WL 1181577, at *2 (D.N.J. Mar. 30, 2017)………………………………26

*Grayson v. Mayview State Hosp.,*
    293 F.3d 103, 108 (3d Cir. 2002)…………………………………………...27

*Grondal v. United States,*
    2012 U.S. Dist. LEXIS 19398, at *11-13
    (E.D. Wash. Feb. 16, 2012) (Quackenbush, J.)……………………………………10

*Hagans v. Franklin Cty. Sheriff,*
    695 F.3d 505, 5509 (6th Cir. 2012), *rehrg. and rehrg. en banc* denied…………….....16

*Haines v. Kerner*,
    404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)…………………………...10
*Harless v. CSX Hotels, Inc*.,
    389 F.3d 444, 447 (4th Cir. 2004)……………………………………………………………25
*Havens Realty Corp. v. Coleman*,
    455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)…………………………………20
*Hill v. Barnacle*,
    No. 17-2448, 10-11 (3d Cir. Sep. 13, 2018)………………………………………………10
*Int'l Primate Prot. League v. Adm'rs of Tulane Educ*. Fund,
    500 U.S. 72, 77, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991)……………………...…..17
*Johnson v. Oroweat Foods Co.*,
    785 F.2d 503, 509 (4th Cir. 1986)……………………………………………………………28
*Kamen v. Kemper Fin. Servs., Inc*.,
    500 U.S. 90, 99 (1991)…………………………………………………………………...18
*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375, 377 (1994)…………………………………………………………………10
*Kolb v. ACRA Control, Ltd.*,
    21 F. Supp. 3d 515, 522 (D. Md. 2014)……………………………………………………29
*Laber v. Harvey*,
    438 F.3d 404, 426-427 (4th Cir. 2006)…………………………………………24,25,28
*Laufer v. Naranda Hotels, LLC*,
    60 F.4th 156, 162 (4th Cir. 2023)……………………………………………….………20
*Logan v. SecTek, Inc*.,
    632 F. Supp. 2d 179, 183-84 (D. Conn. 2009)………………………...…………………9
*Long v. Wilson*,
    393 F.3d 390, 400 (3d Cir. 2004)……………………………………………………………26
*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 560-61 (1992)……………………………………………………………11,17
*Mala v. Crown Bay Marina, Inc*.,
    704 F.3d 239, 244 (3d Cir. 2013)…………………………………………………………11
*Matzker v. Herr*,
    748 F.2d 1142, 1146 (7th Cir.1984)………………………………………………………10
*MedCom Carolinas*,
    42 F.4th at 198………………………………………………………………………...28
*Mendez v. Republic Bank*,
    725 F.3d 651, 661 (7th Cir. 2013)………………………………………………………..8
*Nemet Chevrolet, Ltd., v. Consumeraffairs.com, Inc*.,
    591 F.3d 250, 253 (4th Cir. 2009)…………………………………………………………8
*Next Generation Group, LLC v. Sylvan Learning Centers, LLC*,
    2012 WL 37397 at *5 (D. Md. Jan. 5, 2012)……………………………………………28
*Osei v. Univ. of Md. Univ. Coll*.,
    No. CV DKC 15-2502, 2018 WL 2117927, at *3 (D.Md. May 8, 2018)………………21
*Osei v. University of MD Univ College*,
    No. 16-2074 (4th Cir. February 6, 2018)……………………………………………………22
*United States v. Mannie*,
    509 F.3d 851, 856 (7th Cir. 2007)………………………………………………………..9

*Patti Menders v. Loudoun County School Board*,
   No. 22-1168 (4th Cir. 2023)……………………………………………..16
*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015)…………………………………………16, 17, 19
*Phillips v. Cnty of Allegheny*,
   515 F.3d 224, 228 (3d Cir. 2008)………………………………………...12
*Piney Run Pres. Ass'n v. Cnty. Comm'rs*,
   268 F.3d 255, 262 (4th Cir. 2001)………………………………………12
*Public Citizen v. United States Department of Justice*,
   491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989)…………………………20
*Rose v. Ortiz,*
   No. 14-1738, 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015)………………..……..11
*Rothstein v. - UBS AG*,
   2013 U.S. App. LEXIS 3244 (2d Cir. Feb. 14, 2013)……………….………………14
*S.C. Ins. Co. v. James C. Greene & Co.*,
   290 S.C. 171, 176 (Ct. App.1986)……………………………………………....15
*Saucier v. Katz,*
   533 U.S. 194, 201 (2001)…………………………………………………....16
*Small v. Pioneer Mach., Inc.,*
   329 S.C. 448, 464 (Ct. App. 1997)………………………………………………15
*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
   967 F.3d 295, (3d Cir. 2020)………………………………………………15
*Steinburg v. Chesterfield County Planning Com'n*,
   527 F.3d 377, 390 (4th Cir. 2008)…………………………………………25
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499, 2509 (2007)…………………………………………12
*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
   508 U.S. 439, 447 (1993)………………………………………………...18
*U.S. v. Madden*,
   733 F.3d 1314, 1322–23 (11th Cir.2013)……………………………………………9
*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
   42 F.4th 185, 197 (4th Cir. 2022)..............................................................27
*United States v. Olano* (91-1306),
   507 U.S. 725 (1993)………………………………………………...29
*United States v. Sineneng-Smith*,
   590 U.S. 371, 374-75 (2020)………………………………………………18
*United States v. United States Gypsum Co.*,
   333 U.S. 364, 395 (1948)………………………………………………9
*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792, 799 (2021)………………………………………………21
*Van Emburgh ex rel. Est. of Van Emburgh v. United States*,
   95 F.4th 795, 800 (4th Cir. 2024)………………………………………………18
*Ward Elec. Serv., Inc. v. First Commercial Bank*,
   819 F.2d 496, 497 (4th Cir. 1987)………………………………………………25
*Warth v. Seldin,*
   422 U.S. 490, 501 (1975)………………………………………………..12

*Wideman v. Innovative Fibers LLC,*
    No. 23-1163, 8 n.3 (4th Cir. May. 2, 2024)…………………………………………17,18,19
*Wikimedia Found. v. Nat'l Sec. Agency,*
    857 F.3d 193, 208 (4th Cir. 2017)………………………………………………………12
*Wild Va. v. Council on Env't Quality,*
    56 F.4th 281, 293 (4th Cir. 2022)……………………………………………………..12
*Williams v. Consovoy,*
    453 F.3d 173, 176-77 (3d Cir. 2006)…………………………………………....8

## Federal Rules of Appellate Procedure

    Fed. R.App.P.34 (a)(1)…………………………………………………....1
    Fed. R.App. P. 4(a)(1)(B)……………………………….…………………………...1

## Federal Rules of Civil Procedure

    Fed. R. Civ. Proc. 12(b)(1)………………………………… ……………..2,3, 7,10,11, 30
    Fed. R. Civ. Proc. 12(b)(6)………………………………………….…...3, 8, 30
    Federal R.Civ. Proc. 15(a)…………………………….…….……………25, 26, 27

## Statutes

28 U.S.C. §1331 (federal question)……………………………………...……..1
28 U.S.C. §1367 (supplemental jurisdiction)…………………………………………1
28 U.S.C.§1291(a)………………………………………………….…………...1,8
28 U.S. Code § 1332……………………………………………………………………...1
Title IV of the Higher Education Act of 1965 (Title IV of HEA)…………………………..5
Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*…………………………………17

## Constitutional Provisions

U.S. Const. Article III………………………………..2,3, 7, 11, 12, 14, 15, 16, 17,18,19, 21,29

**<u>NOTE: Reader's Guide to page number references & citations in this Brief</u>**

Preliminarily, Appellant-Plaintiff Mr. Michael O. Livingstone ("Plaintiff" or "Appellant" or "Livingstone") hereby respectfully provide this guide to all readers regarding in-text page number references in this brief because of the posture of this case from U.S. District Court:

*1.* "A" designated in-text page number citations in this brief refers to Appellant's Appendix Volume I of I comprised of relevant reproduced record in this case.

*2.* "ECF" designated in-text page number citations in this brief refers to Electronic Case Filing docket entries from scanned reproduced page numbers on the top headers of the documents filed in the District Court Case No.1:22-cv-03096-BAH (USDC-MD).

# I.    STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R.App.P.34 (a)(1), Plaintiff states that oral argument may significantly aid this court in the resolution of this case notwithstanding this court's reservation that oral argument is only applicable if both sides are legally represented. Plaintiff can handle oral argument before this Circuit Court.

# II.    JURISDICTIONAL STATEMENT

Plaintiff incorporates herein by reference the attached Appendix Volume I of reproduced record and all filings in the District Court. Plaintiff states the following:

The District Court purportedly exercised jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and §1367 (supplemental jurisdiction) without addressing Diversity Jurisdiction.

This Circuit Court has appellate jurisdiction pursuant to 28 U.S.C.§1291(a) to the extent that this is an appeal from a final order and opinion (A16-A34; ECF Nos.78 & 79) adjudicating all claims without prejudice, and without leave to amend. This circuit court has Diversity Jurisdiction pursuant to 28 U.S. Code § 1332 (*see* ECF No.20, p.7, ¶¶ 5 & 6).

This appeal is jurisdictionally timely to the extent that pursuant to Fed. R. App. P. 4(a)(1)(B), Plaintiff filed a timely notice of appeal (A9-A34; ECF No.84) on January 19, 2023 that falls within thirty (30) days of entry of the District Court's December 20, 2023 final order dismissing Plaintiff's initial civil rights complaint without prejudice without leave to amend (A10-A24; ECF Nos.78 & 79).

### III. STATEMENT OF TWO ISSUES PRESENTED FOR APPELLATE REVIEW

1.      WHETHER the District Court erred or abused its discretion when it granted Defendant's motion to dismiss the *pro se* Plaintiff's civil rights complaint under Federal Rules of Civil Procedure 12(b)(1) without leave to amend; without prejudice; without separately assessing statutory standing, injury, and Article III standing under each specific cause of action in the operative complaint, and without performing choice-of-law analysis.

2.      WHETHER the District Court erred or abused its discretion when it failed to address Plaintiff's statutory and common law retaliation claims under COUNT ELEVEN and COUNT FOURTEEN of Plaintiff's Amended Complaint (ECF No. 20).

**Suggested Answer**: Yes

### IV. STATEMENT OF RELATED CASES & PROCEEDINGS

Plaintiff states that there are no related pending cases to this appeal. There are no matters pending in this case at the District Court.

### V. STATEMENT OF THE CASE

Plaintiff initiated this lawsuit by filing *pro se* initial complaint in the United States District Court for the District of Maryland, Baltimore Division, on November 30, 2022 (A2; ECF No.1). After obtaining leave of court before defendant appeared before the district court, Plaintiff filed prejudgment corrected amended complaint around December 22, 2022 (A3; ECF No. 20) by changing the business designation of the corporate Defendant from *Incorporated* to Limited Liability Company (LLC); removing an individual Defendant (Ms. Teresa L. Drzewiecki) of the corporate Defendant Walden University, LLC; and by including new claims that accrued within the same nucleus of this case.

On March 17, 2023, Defendant filed a motion to dismiss Plaintiff's corrected amended Complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of Article III standing to sue and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (ECF No. 43; A5). On April 11, 2023, Plaintiff filed a request for Judicial notices in support of opposition to Defendant's motion to dismiss (ECF No. 49; A5). On May 30, 2023, Plaintiff filed memorandum of law brief in opposition to Defendant's motion to dismiss including request for judicial notices, and request for leave to amend the operative complaint after judgment (ECF Nos.62, 63, 64; A6).

By Memorandum and Order dated December 20, 2023 (A16-A34; ECF Nos. 78 &79), the District Court granted Defendant's Motion to Dismiss Plaintiff's operative complaint without prejudice pursuant to Fed. R. Civ. Proc. 12(b)(1) *only*; without prejudice; and without leave to amend the complaint. Plaintiff filed a timely notice of appeal to this United States Court of Appeals for the Fourth Circuit on January 19, 2024 (ECF No. 84; A9-A14).

Plaintiff's operative complaint (ECF No. 20) contains a section headed "Factual Allegations" (ECF No. 20, pp.10-33) and about sixteen (16) counts. Each of the sixteen (16) Counts of the operative Complaint incorporates by reference all those factual allegations. Those 16 Counts set forth in detail separate legal grounds for the relief sought and explains why the facts as pleaded warrant such relief.

Plaintiff is a young adult black male Citizen of the United States of America and domiciled resident of the Commonwealth State of Pennsylvania with linguistic West African accent (ECF No. 20, p.8, ¶1).

Defendant Walden University, LLC ("Walden" or " Defendant" or "University" or "Walden University") is a for-profit online enterprise, academic institution, and Limited Liability

Company ("LLC") with its principal administrative offices in Columbia, Maryland; and

academic offices in Minneapolis, Minnesota (*Id*, p.8, at ¶2). In 2021, Adtalem Global Education,

Inc., an Illinois-based corporation, became Walden's parent company. (*Id*).

In 2020, Plaintiff gained admission and matriculated into Walden University to pursue

the academic graduate degree of Master of Science in Leadership ("MSL program") at Walden

University's College of Management and Technology (re-named as College of Management and

Human Potential) during the academic year 2020-2021 catalog (ECF No. 20, p.8, ¶¶ 9 &12).

Plaintiff added Executive Leadership *concentration* track to his MSL program at Walden in the

year 2021 (*Id*, p.10 at ¶10). Walden's agent, Mr. Seth Russell, was Plaintiff's enrollment advisor

during Plaintiff's admission and matriculation process into Walden University in the year 2020.[1]

(*Id*, at ¶11).

Walden has published within its advertised matriculation admission academic catalog of

Plaintiff's academic year 2020-2021 admission that "Walden has been committed to providing

the best education for working professionals like you" (ECF No. 20; Am. Compl.'s pp.10-11,

¶¶12-18, *citing* Catalog's Page i). Walden admitted and matriculated into the MSL program

despite the fact that Plaintiff was not a working adult professional. Walden designed curriculum

and tailored the content of the MSL program for " working professionals" (A19-A20; ECF

No.78, p.3). Plaintiff struggled to succeed in the MSL program with stress and incomplete grades

(A24, n.8; ECF No. 78, n. 8) because Plaintiff was not a working professional to bring working

knowledge and experience into classroom discussions, coursework assignments, and projects.

---

[1]    See *Carroll v. Walden Univ.*, CIVIL 1:22-cv-00051-JRR, 24 (D. Md. Nov. 28,
2022) (observing that "Defendants are correct that Plaintiffs Carroll and Charles do not allege
who the specific enrollment advisor was that contacted them")

Plaintiff managed to complete all his MSL graduate classes online and graduated around December 2022.

Plaintiff used federal student financial aid *Direct Graduate Plus* student loans to pay or finance his COA (Costs Of Attendance) costs and expenses (i.e., tuition, room, and board) throughout the MSL program.[2] (*Id*, p.12 at ¶20,24). *Direct Graduate Plus* student loans is provided by the US Department of Education and processed by Walden University through Program Participation Agreement (PPA) between Walden and U.S. Department of Education (*Id* at ¶26) under the eligibility criteria promulgated by U.S. Congress under Title IV of the Higher Education Act of 1965 (Title IV of HEA) loan programs (*Id* at ¶ ¶24 –44, *see* Federal Handbook).

In Spring 2022 semester at Walden, Plaintiff needed to increase his Cost of Attendance (COA) federal student financial aid increase at Walden to cover changes in room and board expenses legally binding rent payment deadlines (ECF No.20's Ex. A). By contract and consumer law, U. S. Department of Education requires designated Directors of Federal Financial Aid Offices of participating universities to process COA federal student financial aid increase applications, not ordinary financial aid staff. Walden concealed the contact information about its Directors of federal student financial aid program. Walden failed to publish or produce COA increase forms with reckless disregard to consumer law information disclosure unlike what other participating Universities in the federal student loan programs have done. [3]

---

[2]　　*See*, https://studentaid.gov/understand-aid/types/loans/plus/grad (describing federal Graduate Plus student loan program)

[3]　　See e.g., West Chester University of Pennsylvania has published its version here: https://www.wcupa.edu/financialAid/documents/Budget%20Adjustment%20Request%20Form.pdf

Walden's student financial aid office ignored its contractual duty to readily disclose the contact information for Walden's Directors of student financial aid office (i.e., Ms. Teresa Drzewiecki and Ms. Melvina Johnson). Plaintiff became unduly distracted from his graduate studies to go all the way from office-to-office searching for Walden's student financial aid directors (Am. Compl.'s ECF No. 20, pp.19-30, ¶¶ 51- 96). Plaintiff went to Walden's front desk financial aid staff, to a supervisor (Angela), to the University Ombudsman, to Mr. Lockner, and finally to the Walden University President's office who ultimately connected Plaintiff to the Directors of student financial aid at Walden. *Id.*

Walden's Ms. Drzewiecki failed to make herself readily available to students in the Spring 2022 semester; she failed to publish the COA increase application forms for student-borrowers. This inflicted undue hardship because Plaintiff had to spend months distracted from his graduate studies to search for the director and the forms (*see* generally Am. Compl.'s ECF No. 20, pp.19-30, ¶¶ 51- 96).

While searching for Walden's financial aid directors to process COA increase request, Plaintiff's legally binding housing rent payment deadlines expired; Plaintiff's Landlord filed a plethora of late payment notices and court actions to evict Plaintiff from housing in the pandemic (Am. Compl.'s Exhibit "A"). This stigmatized Plaintiff's record, delayed Plaintiff's rent payment negatively, lost housing, and negatively affected Plaintiff's credit and rental history. *Id.*

Walden demanded that Plaintiff should sign an agreement to release all his claims including his civil rights claims against Walden in exchange for $5000 tuition refund of Plaintiff's paid federal student *Grad Plus loan* for the Fall 2022 semester as settlement "consideration" and general release (*see* Am. Compl.'s ECF No. 20, pp. 79-83, ¶¶ 389-413 attaching authentic integral documents of emails and other evidence ECF No. 20 - 4 as a copy of

the unsigned agreement attached to Amended Complaint as Exhibit "D"; *see* also authentic

emails attached as Exhibits to Amended Complaint).

Plaintiff rejected the $5000 student loan refund and declined to sign the general release

agreement because Walden was supposed to process Plaintiff's COA federal student financial

increase without requiring Plaintiff to sign any general release of his civil rights. Congress and

US Department of Education never authorized any University to withhold student's federal

financial aid as condition precedent for the student to release all their claims including civil

rights claims.[4] Moreover, the $5000 was a loan refund, which means Plaintiff would still have to

repay the $5000 to the federal student loan servicer.

## VI.   **SUMMARY OF ARGUMENT**

Defendant and the District Court baldly assert that Plaintiff's operative complaint is

defectively pleaded without Article III injury. Plaintiff respectfully refers this circuit court  to the

four corners of the text of Plaintiff's operative complaint and integral documents of authentic

exhibits attached thereto as the most efficacious method for evaluating Plaintiff's contentions,

the true nature of Plaintiff's claims, and the scandalous manner in which Plaintiff's rights have

been violated. Plaintiff contends that the District Court erred or abused its discretion when it

granted Defendant's motion to dismiss the *pro se* Plaintiff's civil rights complaint under Federal

Rules of Civil Procedure 12(b)(1) without leave to amend; without prejudice; without separately

assessing statutory standing, injury, and Article III standing under each specific cause of action

in the operative complaint, and without performing choice-of-law analysis. In addition, the

District Court erred or abused its discretion when it failed to address Plaintiff's statutory and

---

[4]      Judicially notice https://fsapartners.ed.gov/knowledge-center/fsa-handbook/pdf/2022-2023 for the eligibility criteria of federal student financial aid.

common law retaliation claims under COUNT ELEVEN and COUNT FOURTEEN of Plaintiff's operative Complaint (see ECF No.20).

## VII.    <u>ARGUMENTS</u>

Plaintiff contends as follows:

### A) <u>Legal Standards of Review</u>

The District Court order (A15-A37; ECF Nos. 78-79) is an appealable final order because it dismisses all claims in the operative amended complaint without prejudice and without leave to amend. *Britt v. DeJoy*, No. 20-1620, 2022 WL 3590436 (4th Cir. Aug. 17, 2022) (en banc) at 4.

This circuit court has jurisdiction to review the district court's final order under 28 U.S.C. § 1291. In doing so, this circuit court reviews the dismissal for lack of jurisdiction *de novo*. See *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013). This court assumes "all well-pled facts to be true" and draws "all reasonable inferences in favor of the Plaintiff." See *Nemet Chevrolet, Ltd., v. Consumeraffairs.com, Inc*., 591 F.3d 250, 253 (4th Cir. 2009) (cleaned up); see also *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (where Defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based…the Plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration").

Plenary, *de novo*, abuse of discretion, and clear error are applicable standards of appellate review for the confluence of issues in this appeal. See *Williams v. Consovoy,* 453 F.3d 173, 176-77 (3d Cir. 2006); *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir. 2005). A district court's erroneous view of the law is an abuse of discretion. See *Sosebee v. Astrue*, 494 F.3d 583, 586 (7th Cir. 2007) at 586; see also *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013)(explaining that *de novo* review requires deciding the case based on an independent review

of the evidence and arguments without giving any presumptive weight to the conclusion). Clear

error is "[d]eviation from a legal rule." *U.S. v. Madden*, 733 F.3d 1314, 1322–23 (11th Cir.2013).

Thus, a district court "abuses its discretion when it makes a clearly erroneous finding of fact."

*United States v. Mannie*, 509 F.3d 851, 856 (7th Cir. 2007); see also *United States v. United*

*States Gypsum Co*., 333 U.S. 364, 395 (1948).

Abuse of discretion "arises when a decision is 'made without a rational explanation,

inexplicably departed from established policies, or rested on an impermissible basis." *Flagg v.*

*Essex Cnty. Prosecutor,* 171 N.J. 561, 571 (2002)(quoting *Achacoso- Sanchez v. Immigration &*

*Naturalization Serv.*, 779 F.2d 1260, 1265 (7th Cir. 1985)). Failure to apply proper legal standard

constitutes abuse of discretion. See *Cheney v. Anchor Glass Container Corp*., 71 F.3d 848, 850

(11th Cir.1996) (noting that "the court's failure to apply the correct legal standard…constitute[s]

an abuse of discretion")(omissions added). Abuse of discretion can manifest in the form of

"partiality, prejudice, bias, or ill-will as shown by the evidence or the record." *Commonwealth v.*

*Widmer*, 560 Pa 308, 744 A.2d 745 (Pa.2000) at 322; *Fowler v. Butts,* 229 F.3d 788 (7th Cir.

2016) (impartiality can be challenged on appeal).

Federal circuit courts apply the same Rule 12(b) standard of review that is explicated by

the U.S. Supreme Court in the case of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.

2009). Under this standard, a complaint should be "plausible" not "possible" to survive a motion

to dismiss. See *Logan v. SecTek, Inc*., 632 F. Supp. 2d 179, 183-84 (D. Conn. 2009) (dismissing

disability-discrimination complaint because the facts alleged made it "possible, but not

plausible" that the employer knew the Plaintiff was disabled as opposed to merely injured); see

also *Equal Emplymt. Oppor. Comm'n v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th

Cir. 2007)(citing *Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[A] well-pleaded complaint may proceed even if it strikes a savvy judge [that] recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Federal Rule of Civil Procedure 12(b)(1) provides dismissal of an action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of any factual support for subject matter jurisdiction despite the pleading's sufficiency (factual attack). See *Grondal v. United States*, 2012 U.S. Dist. LEXIS 19398, at *11-13 (E.D. Wash. Feb. 16, 2012) (Quackenbush, J.). For a facial attack, all allegations are accepted as true. *Id*. For a factual attack, evidence outside the pleadings needed to resolve factual disputes as to jurisdiction may be considered. See *Assoc. of Am. Med. Coll. v. United States,* 217 F.3d 770, 778 (9th Cir. 2000). Plaintiffs have the burden of establishing jurisdiction. See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). At bar, Plaintiff's operative complaint and opposition papers (ECF Nos. 20 & 64) successfully advanced his claims that the District Court has subject matter jurisdiction over this case.

Corollary to appellate standard of review is liberal construction is because circuit courts liberally construe *pro se* complaints. See *Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir. 2001) (recognizing that "we too construe *pro se* filings liberally")(citing *Whitford v. Boglino*, 63 F.3d 527, 535 n.10 (7th Cir. 1995); see also *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984) (observing that "federal district courts must ensure that pro se litigants are given 'fair and meaningful consideration"); see also *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972) (*pro se* pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers"); see also *Hill v. Barnacle*, No. 17-2448, 10-11 (3d Cir. Sep. 13, 2018)(stating that "as our now third remand suggests, however, Hill's claims deserve to be taken

seriously and, if she continues to proceed *pro se*, *she is entitled to the liberal treatment traditionally afforded pro se litigants*") (emphasis added). Federal courts are required to apply the law irrespective of whether the *pro se* Plaintiff has mentioned it by name. See *Rose v. Ortiz*, No. 14-1738, 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015)(citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

With these legal standards in mind, Plaintiff contends as follows:

B) <u>**Legal Arguments in Support of Issue No. 1 presented for review.**</u>

  1. WHETHER the District Court erred or abused its discretion when it granted Defendant's motion to dismiss *pro se* Plaintiff's civil rights complaint under Federal Rules of Civil Procedure 12(b)(1) without leave to amend; without prejudice; without separately assessing statutory standing, injury, and Article III standing under every specific cause of action in the amended complaint with applicable choice-of-law analysis.

Pursuant to Article III of the U.S. Constitution, the jurisdiction of the federal courts is limited to "Cases" and "Controversies." *See* U.S. Const. Art. III, § 2. The U.S. Supreme Court has long understood Article III "to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." See *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). And the Court has identified the doctrine of standing to implement that requirement. Id.

To possess Article III standing to sue, a Plaintiff must satisfy the three elements enunciated by the high court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (culling elements from prior decisions). Under the first *Lujan* element, "the Plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See* 504 U.S. at 560 (citations and internal quotation marks omitted). The second *Lujan* element requires "a causal

connection between the injury and the conduct complained of." *Id.* As for the third *Lujan*

element, "it must be likely, as opposed to merely speculative, that the injury will be redressed by

a favorable decision." Id. at 561 (internal quotation marks omitted).

When assessing whether a Plaintiff possesses Article III standing to sue, a court

"accept[s] as valid the merits of [the Plaintiff's] legal claims." See *Fed. Election Comm'n v.*

*Cruz*, 142 S. Ct. 1638, 1647 (2022); see also *Warth v. Seldin*, 422 U.S. 490, 500 (1975)

(recognizing that "standing in no way depends on the merits of the Plaintiff's contention that

particular conduct is illegal"). Further, a court "must look to the facts at the time the complaint

was filed." See *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022). A court

may limit its standing inquiry to the allegations of the complaint or, if there are any material

factual disputes, it may conduct an evidentiary hearing. See *Wikimedia Found. v. Nat'l Sec.*

*Agency*, 857 F.3d 193, 208 (4th Cir. 2017). On appeal, where a district court has conducted such

a hearing, this circuit court reviews relevant findings of fact for clear error. See *Piney Run Pres.*

*Ass'n v. Cnty. Comm'rs*, 268 F.3d 255, 262 (4th Cir. 2001). This court otherwise considers the

"legal question of whether [a Plaintiff] possesses standing to sue as a *de novo* matter." Id

1) **Omission of crucial facts in the District Court's opinion:
   Walden's $5000 refund offer as settlement consideration was not a refund because
   it was a student loan refund to be repaid to the US. Department of Education loan
   servicer. Federal student Loan cannot be used for private settlement consideration.**

Preliminarily, these mispresented facts should be straightened out from the district court's

opinion to avoid misguiding this fourth circuit court. [5] The District Court missed the gravamen of

---

[5]     When deciding motions to dismiss, the court must "accept all factual allegations in the
complaint as true," *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 127 S. Ct. 2499,
2509 (2007), and not conjure its own facts. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835
(3d Cir. 2011). The Court was supposed to accept as true all well-pleaded factual allegations and
construe them in the light most favorable to the Plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d
224, 228 (3d Cir. 2008); *Warth v. Seldin,* 422 U.S. 490, 501 (1975).

Plaintiff's claims when it said Walden was not obligated to grant Plaintiff's request for COA increase (A31 ECF No. 78, p.15). Plaintiff's argument is that Walden was obligated by the undisputed Program Participation Agreement (PPA) contract Walden executed with the U.S. Department of Education and consumer disclosure law to participate in federal student financial assistance programs with student -borrowers by making the financial aid Directors readily accessible to student-borrowers (ECF No.20, pp.1-17, ¶ 25-51).

District court failed to account for the fact that public federal student loan funds cannot be used as settlement *consideration* for private civil rights settlements. The district court's opinion (ECF No. 78, p.8, ¶2; A24, ¶ 2) omits crucial fact where it says as follows: "...Defendant offered Plaintiff a tuition refund of $5,000 in exchange for his release of all claims against Defendant. Id. at 75. Plaintiff refused. *Id*." This statement is factually wrong because the district court failed to address why Plaintiff refused the $5000 loan refund as settlement consideration. Plaintiff pled in his complaint (ECF No. 20, pp.79-83, ¶¶ 389-413) with evidence of the unexecuted settlement agreement attached to the complaint as Exhibit "D" (ECF No. 20- 4) that Walden asked Plaintiff to generally release all his claims including his civil rights claims in exchange for $5000 tuition refund of his federal student *Grad Plus* loan.

Plaintiff rejected the measly $5000 federal student loan from Walden as settlement offer consideration because that is Conversion, Fraudulent Misuse, Abuse of Federal Funds under COUNTS XV and XVI of the operative complaint whereas Walden is not supposed to use federal student financial aid funds or loans to settle private claims with its students. Only private funds should be used as consideration to settle private civil rights cases, not federal funds, not federal student loans. In other words, if Plaintiff accepted the $5000 student loan refund from

Walden, then Plaintiff would still have to repay it to the federal student loan servicer. Nobody must repay civil rights settlement consideration money to loan servicer. Thus, the $5000 student loan refund was a bait, not a real refund, because plaintiff would still have to repay it to the loan servicer. The District Court failed to address this contention in Plaintiff's opposition papers (ECF No. 64, pp.125-129).

    2) <u>**The district court failed address *proximate cause* in the Article III injuries.**</u>

Next, Plaintiff's complaint pleads that Walden caused the eviction by direct and proximate cause (ECF No.20, pp.5, 33, 36, 38, 41,45, 48, 52, 56, 59, 60, 64, 67) because there was no financial aid director readily available to student-borrowers to process the COA increase requests regardless of whether Walden was obligated to grant the COA increase request or not – Financial Aid Directors have duty to make themselves available to student-borrowers and Plaintiff did not have to perambulate helter-skelter for months searching for Walden's financial aid director for months and go all the way to the University Presidents' office to find the director of student financial aid. Plaintiff incurred irreparable damages, mental anguish, loss of housing, distraction to his graduate academic work while moving helter-skelter from office-to-office in search of Walden's directors of student financial aid to process his COA financial aid increase. Plaintiff lost his housing while searching for the Financial Aid Director.

District court did not address proximate cause under Article III injury. Walden should be liable for proximate cause of the injuries to Plaintiff, not Plaintiff's landlord. See *C.R.M. v. United States*, Case No. 1:20-cv-00404 (AJT/IDD) (E.D. Va. Aug. 20, 2020)(discussing proximate causation in Article III injury analysis); see also *Rothstein v. - UBS AG*, 2013 U.S. App. LEXIS 3244 (2d Cir. Feb. 14, 2013) (holding that Article III Standing may exist despite absence of proximate cause — injury may still be sufficiently traceable to Defendant's conduct).

In *Comm'rs of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, Civil Action 2:21-cv-42-RMG, 6-7 (D.S.C. Dec. 10, 2021), for example, involving Article III standing, the court denied the Defendant's the motion to dismiss by holding that "Plaintiff has adequately alleged that each Defendant proximately caused its injuries (citing *S.C. Ins. Co. v. James C. Greene & Co.*, 290 S.C. 171, 176 (Ct. App.1986) (noting that "if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the harm does not relieve him of liability. The court reasoned that in such cases, both tortfeasors are in breach of a duty of care owed to the Plaintiff and, because the negligence of both concurred to produce the injury, both are liable to the full extent of the Plaintiff's damages") (internal citation omitted). Id. The court further explained that "Proximate cause does not mean the sole cause" (citing *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 464 (Ct. App. 1997) ("The Defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury" and Defendants' varied arguments to the contrary-including that Plaintiff is "attempt[ing] to plead around South Carolina's strict proximate cause requirements" by pursuing a market share liability theory-are unconvincing"). *Id.*

In *Anza v. Ideal Steel Supply Corp.*, 547 U. S. 451, 456 (2006) at 458, the high court ruled that Proximate causation is not a requirement of Article III standing, which requires only that the Plaintiff 's injury be traceable to the Defendant's conduct.

In *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, (3d Cir. 2020), the court held that "Because the Plaintiffs' theory of liability adequately alleges proximate causation, we will reverse the District Court and remand for further proceedings consistent with this opinion.").

Applying the cases of *Costco Wholesale Corp., St. Luke's,* and *Rothstein,* by proximate cause, Walden should be liable for the three categories of injuries the district court outlined in its opinion (ECF No.78; A29-A33).

3)  **District Court over-generalized the injuries instead of Separately
    assessing the injuries under each Count or statute of the operative complaint.**

Next, reverse the district court's dismissal because discretion was abused when the district court's opinion over-generalized Plaintiff's injuries by categorizing them into three categories (A29-A33; ECF No.78, pp.14-17) rather than assessing injury under each statute or cause of action in the operative complaint.

The U.S. Supreme Court has cautioned lower courts against over-generalizations. See *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (declaring that "clearly established prong must be applied in light of the specific context of the case, not as a broad general proposition"); see also *Hagans v. Franklin Cty. Sheriff*, 695 F.3d 505, 5509 (6th Cir. 2012), *rehrg. and rehrg. en banc* denied (holding that the right must be "defined at the appropriate level of generality--a reasonably particularized one").

In *Patti Menders v. Loudoun County School Board*, No. 22-1168 (4th Cir. 2023), for example, this circuit court separately assessed Article III standing and injury under each claim without over-generalization. This court vacated and remanded to the district court's opinion. *Id*

In *Pender v. Bank of Am. Corp.*, 788 F.3d 354 (4th Cir. 2015), for example, this fourth circuit court reversed the district court's dismissal of the case for lack of Article III standing. This court found that William Pender and David McCorkle ("Plaintiffs") had both statutory and Article III standing for their ERISA violation claim against NationsBank ("Bank") even if the Plaintiff's did not have statutory standing under other claims. This court did not over-overgeneralize or over-categorize the injuries in the case of *Pender.*

In this case at bar, Plaintiff has both statutory and Article III standing under COUNT II,

Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq* of Plaintiff's complaint ( ECF No. 20,

pp.36-38; ECF No. 64, pp.63-66, 98,101), for example, because applying this court's reasoning

in the case of *Pender,* the injury-in-fact requirement is not limited to financial losses under

certain statutes. This Fourth Circuit explained that an injury refers to the invasion of a "legally

protected interest." More particularly, this court said this in *Pender,* 788 F.3d 354, 366 (4th Cir.

2015):

> …Instead, an injury refers to the invasion of some "legally protected interest" arising
> from constitutional, statutory, or common law. *Lujan v. Defenders of Wildlife*, 504 U.S.
> 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Indeed, the interest may exist "solely
> by virtue of statutes creating legal rights, the invasion of which creates standing." Id.
> (internal quotation marks and citation omitted). Thus, "standing is gauged by **the specific**
> common-law, statutory or constitutional claims that a party presents." *Int'l Primate Prot.*
> *League v. Adm'rs of Tulane Educ*. Fund, 500 U.S. 72, 77, 111 S.Ct. 1700, 114 L.Ed.2d
> 134 (1991).")

(emphasis added).

The keyword here is "specific." Some statutes do not require actual injuries; only legal injuries.

Accordingly, reverse or vacate the district court's order in this case.


4) **This Circuit Court can address issues that the district court**
   **failed to address by applying the "principle of party presentation"**

Next, the district court failed to perform the judicial duty to assess injury and standing

under each specific statute in Plaintiff's operative complaint without over-generalizations.

However, this circuit court can perform that judicial duty because in the case of *Wideman v.*

*Innovative Fibers LLC*, No. 23-1163, 8 n.3 (4th Cir. May. 2, 2024), this court addressed issues

that were forfeited by a party or the issues in opposition papers that the district court did not

address.

In *Wideman* at n.3, this court applied the principle of party presentation to address waived or forfeited arguments by a party or the district court. This Court reasoned as follows:

> …The principle of party presentation often requires that we ignore errors not briefed by the parties. See *United States v. Sineneng-Smith,* 590 U.S. 371, 374-75 (2020). But "[t]he party presentation principle is supple, not ironclad." Id. at 376. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). And we may address a predicate legal question that disposes of this appeal, even if the parties erroneously agree on its answer and dispute only subsequent, dependent issues. See *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 447 (1993) ("[A] court* may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." (alteration in original) (quoting Arcadia v. Ohio Power Co., 498 U.S. 73, 77 (1990)); cf. *Van Emburgh ex rel. Est. of Van Emburgh v. United States*, 95 F.4th 795, 800 (4th Cir. 2024) (exercising discretion to excuse a party's failure to raise an argument in favor of subject matter jurisdiction). These principles permit us to look past the forfeiture here.")

Applying the foregoing reasoning in *Wideman* at n.3 to this case, Plaintiff pleads invasions of his legally protected interests as injuries notwithstanding the three categories of injuries that the district court elucidated in A29-A33; ECF No.78, pp.14-17. The district court especially failed to address legal invasions of Plaintiff's legally protected interests as injury under each statute.

Accordingly, reverse the order because the district court was supposed to construe legal injuries as Article III injury under each statute in the operative complaint even if there was no attenuated concrete actual or physical injury.

5) **District Court abused its discretion when it failed to assess injury separately under choice-of-law diversity jurisdiction of state laws in the operative complaint.**

Next, discretion was abused when the district court failed to address diversity jurisdiction from Plaintiff's operative complaint (ECF No. 20, p.9) with choice-of-law analysis from Plaintiff's opposition brief (ECF No. 64, pp.36-38, 79-82, 95, 97, 107, 122). Reverse the dismissal because discretion was abused when the district court over-generalized the injuries

without performing choice of law analysis under each state law and federal law claim and how an applicable state law considers standing and Article III injury under each claim.

In *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 369 (4th Cir. 2015), this court observed that "We next turn to the question of which circuit's choice-of-law rules apply." In this case, the district court erred when it failed to address choice of law rules.

In *Wideman v. Innovative Fibers LLC*, No. 23-1163, 3 (4th Cir. May. 2, 2024), this court observed that "Despite the understandable confusion about the state law's effect on federal jurisdiction, we conclude that the district court erred in dismissing the workers' complaint for lack of subject matter jurisdiction.") ("But state law cannot circumscribe federal subject matter jurisdiction.").

In *Wideman at* 7, this court found that the district court erred, but for a different reason. This court reasoned that "whether a federal court has subject matter jurisdiction over a case is wholly determined by federal law. This court explained that while states can define the substantive rights asserted in federal diversity jurisdiction, they cannot strip federal courts of subject matter jurisdiction over any category of claims. *Id.* Accordingly, this court held that the district court erred in dismissing the suit for lack of subject matter jurisdiction. *Id.*

Instantly, the district court abused its discretion when it failed to apply diversity jurisdiction and choice of law analysis for Article III injury even if the district court did not have federal question or subject-matter jurisdictions.

### 6) **District Court never addressed informational injury at all.**

Next, reverse the district court's dismissal because discretion was abused when the district neither mentioned nor addressed informational injury at all in the order-opinion (ECF

Nos. 78 &79; A15-A34). Plaintiff argued that Walden's actions inflicted *informational injury* upon him (ECF No.20 p.69; ECF No.64, pp. 44,45, 47, 69).

In *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 162 (4th Cir. 2023), for example, this circuit court accepted informational injury as injury under Article III. This court particularly reasoned as follows:

> …similar to the First Circuit decision and the pertinent Eleventh Circuit concurring opinion, we conclude that Laufer's allegation of an informational injury accords her Article III standing to sue Naranda — whether or not she ever had a definite and credible plan to travel to the Baltimore area." The conclusion that Laufer's allegation of an informational injury accords her Article III standing to sue Naranda is compelled by a line of Supreme Court decisions that begins with *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). That line of decisions also includes *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989), and *Federal Election Commission v. Akins*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998).

Applying this reasoning in *Laufer* to this case, this circuit court can reverse the district court's order.

Moreover, the fact that Plaintiff managed to graduate from Walden University for his MSL degree does not exonerate Defendant from informational injury. By failing to make the information of the financial aid directors readily available to this student-borrower consumer Plaintiff, Walden caused informational injury to Plaintiff. Reasonable minds will agree that the fact that some people got injured, wounded, and recovered from the 9/11 attack, for example, does not mean they did not suffer any injury. Similarly, just because Plaintiff persevered to graduate for his MSL degree with so-called high marks, does not mean Walden did not injure him.

The falsity or false advertisement alleged in Count III of the operative Complaint (ECF No.20, pp.39-45), for example, inflicted informational injury upon Plaintiff because if Walden's

MSL program was tailored towards working professionals (A19), then Walden was supposed to admit only working professionals. It does not matter whether Plaintiff graduated because "every violation [of a right] imports damage." See *Uzuegbunam v. Preczewski,* 141 S. Ct. 792, 799 (2021).

In *Uzuegbunam,* the student sued the university after graduating; the court did not say the student has graduated with high marks anyway; so, the university is excused from injury liability.

In *Carroll v. Walden University, eta al.,* 1:22-cv-00051-JMC (D. Md. filed Jan. 7, 2022), for example, the district court did not say that the black female Walden doctoral graduates do not have Article III standing to sue simply because they had graduated despite their claims against Walden. The district court's order-opinion in this case fails to address Plaintiff's arguments invoking the cases of *Uzuegbunam and Carroll* in Plaintiff's opposition brief (ECF No.64, pp. 39, 40, 60,65,66, 69).

### 7) Prejudice to Plaintiff with reference to Plaintiff's previous *Osei* case with error.

Next, the standard of review above explains that abuse of discretion includes the prong of prejudice. Discretion was abused by way of prejudice to Plaintiff because in ECF No.78, p.10; A26-A27, the district court erroneously relied upon and cited a rather misplaced case of *Osei v. Univ. of Md. Univ. Coll*., No. CV DKC 15-2502, 2018 WL 2117927, at *3 (D.Md. May 8, 2018) ("[W]here . . . the [pro se] Plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, 'the district court [does] not abuse its discretion' in denying a motion to amend the complaint." (omission in original) (quoting *Estrella v. Wells Fargo Bank, N.A*., 497 Fed. App'x. 361, 362 (4th Cir. 2012)).

Judicially notice that the *Osei* (**May 2018**) case is misplaced because the district court in Baltimore in this instant case failed to recognize that antecedent to this circuit court's opinion in *Osei* (May 2018), there was a preceding **February 6**, **2018** order i.e. *Osei v. University of MD Univ College*, No. 16-2074 (4th Cir. February 6, 2018) where this circuit court ruled as follows:

> Michael Osei appeals the district court's order dismissing his civil complaint against the University of Maryland University College and certain employees of the university. Osei requested leave to amend his complaint in his opposition to Defendants' motion to dismiss, but the court did not consider that request in its order dismissing the complaint. Accordingly, we vacate the district court's judgment and remand to allow the court to decide whether leave to amend should be granted.

Thus, this circuit court should rather apply its ruling in *the Osei* case (February 2018) order and vacate the district court's instant order in this case because this circuit court recognized in *Osei* (February 2018) that Plaintiff made a "request for leave to amend" that was contained in the opposition briefs. This court observed that a request for post-judgment leave to amend the complaint within that procedural posture does not have to be a freestanding "motion for leave to amend" with a proposed amended complaint. A freestanding motion for leave to amend a complaint is only necessary at a crucial stage of a case such as after discovery.

As a threshold matter, this supervisory circuit court should reverse the dismissal because of prejudice and/or impartiality towards Plaintiff on the record. See *Fowler v. Butts,* 229 F.3d 788 (7th Cir. 2016) (impartiality can be challenged on appeal). This court should question the relevance of the district court stating that " It is not lost on the Court that the Plaintiff in *Osei, 2018 WL 2117927,* is one and the same Plaintiff in this case…" (A26; ECF No.78, p.10, n.9). This suggests on the record that the district court prejudiced this Plaintiff because this Plaintiff is the same Plaintiff in the *Osei* case. The district court could have cited the *Osei* case to support its reasoning without identifying the fact that this same Plaintiff in the *Osei* case is the same

Plaintiff in this instant case. The *rationale* for identifying this Plaintiff as the same Plaintiff" was to prejudice this Plaintiff. No citizen should suffer prejudice in our courts simply because they have sued or similar suit before in the court. Every case should be handled with judicial integrity on a case-by-case-basis without prejudice to the person or citizen bringing the suit. Even former U.S. President Trump, for example, still gets his day in court on a case-by-case basis without prejudicial references to about 300 cases he has filed in his lifetime.

Moreover, during the April 11, 2023 telephonic status conference (ECF Nos.44 & 52) oral argument, the previous U.S. District Judge, Honorable Lydia Kay Griggsby, took a hard stand against Defendant's clandestine references to Plaintiff's old cases that were simply meant to inflict prejudice upon the court to prejudice this Plaintiff. Judicially notice ECF No.87 as the transcript of the April 11, 2023 telephonic proceedings that was recently filed on February 19, 2024 to the updated case docket.

Accordingly, because of the palpable prejudice on the record against this Plaintiff, this circuit court should reverse the district court's order entirely.

**8) District court abused its discretion when it
   failed to grant leave to amend civil rights complaint.**

Next, Plaintiff contends that the district court erred and abused its discretion when the court denied Plaintiff's prejudgment request for leave to amend the operative complaint (A25-A28; ECF No. 78, pp.9-12; ECF No.79, p.1). The district court noted within its order (ECF No.79, p.1) that Plaintiff expressly requested leave to amend the complaint in his opposition papers (ECF Nos. 62; 64, p.62; ECF No.64, p.62).

It is noteworthy that Plaintiff amended his initial complaint on technical grounds before adjudication. Any subsequent amendment of the prejudgment so-called "corrected amended complaint" should be based upon the adjudicative opinion of the court. It is unreasonable to

expect Plaintiff to file a *motion* to amend unadjudicated corrected amended complaint whether it is a "corrected" or "amended" complaint or both. The procedural posture of the case is more relevant. This court has said in *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) at 427-28 (that "we review for abuse of discretion a District Court's denial of a motion to amend a Complaint, regardless of whether that motion is filed **pre**- or **post**- judgment...")(emphasis added).

It is irrelevant within the context of the procedural posture of this case whether Plaintiff amended the complaint before Defendant appeared before the court or afterwards; or before the court issued an opinion. The relevant point is Plaintiff requested leave to amend after the court released its adjudicative opinion of the operative complaint. The "corrected amended" complaint was not adjudicated when Plaintiff initially amended or corrected it.

It is equally unreasonable to expect Plaintiff to attach a proposed amended complaint together with his response memorandum of law brief in opposition to Defendant's motion to dismiss. Such a proposed amended complaint within the context of the procedural posture of the case should be consistent with the adjudicative opinion of the court. In practice, courts generally grant leave to amend complaints consistent with adjudicative opinion of the court. Here, there was nothing to propose to amend until the district court released adjudicative opinion of the complaint.

Equally irrelevant is the argument that Plaintiff styled it as a *request* for leave to amend after adjudication, not a *motion* for leave to amend because *pro se* filings can be liberally-construed. Federal Rules of Civil Procedure does not allow a party to respond to a Rule 12(b) motion to dismiss with both memorandum of law brief and motion for leave to amend with proposed amended complaint. Instead the response should either be in the form of a memo of

law or an amended complaint, not both. The District Court would be correct to deny leave to amend the complaint after adjudication if Plaintiff did not request leave to amend *at all* in any part of his opposition papers.

Accordingly, reverse the order denying leave to amend the operative complaint.

### 9) It negates well-established Fourth Circuit Policy if this Circuit Court Does Not Reverse the District Court's Denial.

Next, reverse the order because this circuit court has a policy to freely grant leave to amend a complaint. See *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (observing that "it is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a).") (emphasis added). S*ee also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (observing that "the federal policy of liberality in permitting amendments to pleadings, as embodied in [Fed. R. Civ. P. 15] is self-evident."); *see* also *Davenport v. Ralph N. Peters & Co*., 386 F.2d 199, 204 (4th Cir. 1967).

[T]he general rule is that leave to amend a complaint under Federal Rule of Civil Procedure 15(a) should be freely given unless the amendment would be prejudicial to the opposing party; there has been bad faith on the part of the moving party; or the amendment would have been futile. See *Forman v. Davis*, 371 U.S. 178, 182 (1962); *see* also *Steinburg v. Chesterfield County Planning Com'n*, 527 F.3d 377, 390 (4th Cir. 2008). Requests or motions to amend are "typically granted in the absence of an improper motive, such as undue delay, bad faith, or repeated failure to cure a deficiency by amendments previously allowed." *Harless v. CSX Hotels, Inc*., 389 F.3d 444, 447 (4th Cir. 2004) (citing *Ward Elec. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987)). None of these factors prevent granting Plaintiff leave to amend because this case is still at the initial pleading stage.

Even if Defendant opposes Plaintiff's prejudgment motion for leave to amend, Defendant has a heavy burden to meet. See *Gordon v. Dailey*, 2017 WL 1181577, at *2 (D.N.J. Mar. 30, 2017) (noting that "Courts place a heavy burden on opponents of motions to amend."). Plaintiff's burden on a prejudgment motion for leave to amend a complaint under Fed. R. Civ. P. 15 is not high, and the decision to grant leave to amend should not become a quarrel at all. *See* Fed. R. Civ. P. 15(a) (2) (declaring that "The court should freely give leave [to amend] when justice so requires"); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that Rule 15's mandate to freely give leave to amend "is to be heeded").

The U.S. Court of Appeals for the Third Circuit, for example, has repeatedly construed Rule 15(a) to require District Courts to liberally grant motions to amend, particularly where, as here, a good-faith motion or request is brought early in the proceedings and the amendment would not prejudice Defendants. See *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (declaring that "We have held that motions to amend pleadings should be liberally granted"); *see also Clinton v. Jersey City Police Dep't.,* 2017 WL 1024274, at *2 (D.N.J. Mar. 16, 2017) (Cecchi, J.)(noting "strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than technicalities"). Moreover, "[w]hen deciding whether to grant a motion in support of leave to amend pursuant to Rule 15(a)," there is a "general presumption . . . in favor of allowing a party to amend its pleadings." *Demmick v. Cellco P'ship,* 2008 WL 750547, at *1 (D.N.J. Mar. 19, 2008) (Cecchi, J.) (citing *Del Sontro v. Cendant Corp., Inc*., 223 F.Supp.2d 563, 576 (D.N.J. 2002)).

Consistent with these precincts undergirding liberality of pleadings, this fourth circuit has said that "it is this Circuit's policy to liberally allow amendment in keeping with the spirit of

[Fed. R. Civ. P.] 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (citing *Coral v. Gonse*, 330 F.2d 997, 998 (4th Cir. 1964)).

Accordingly, reverse the District Court's denial of Plaintiff's prejudgment request/ motion for leave to amend the complaint.

**10) Plaintiff's request for leave to amend the**
   **Complaint falls within "Amendment as of right" stage.**

Next, reject the district court's reasoning that Plaintiff already amended his complaint before judgment (A25-A28; ECF No.78, pp.10-12). Plaintiff amended his complaint in the absence of Defendant's responsive motion to dismiss. See *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002) (explaining that "if Plaintiff requests leave to amend a Complaint vulnerable to dismissal before a responsive pleading is filed, such leave must be granted…").

Accordingly, reverse the District Court's denial of Plaintiff's motion/ request for leave to amend the complaint following judgment.

**11) "Justice So Requires" Leave to Amend the operative Complaint.**
   **Leave to Amend was not "freely given" despite the dictum of the**
   **United States Supreme Court to freely-give leave to amend.**

Next, discretion was abused by misapplication of law when the District Court denied Plaintiff's prejudgment motion for leave to amend the Complaint. Federal Rules of Civil Procedure provides that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The key word here is "free." This Fourth Circuit has "often described [its] Fourth Circuit policy as one to 'liberally allow amendment'" that "furthers a wider federal policy of—when possible—resolving cases on the merits, instead of on technicalities." *United States ex rel. Nicholson v. MedCom Carolinas, Inc*., 42 F.4th 185, 197 (4th Cir. 2022). Accordingly, reverse the order because the interests of justice will be served by granting leave to amend.

**12) No Factor Militating Against Leave to Amend Is Present. Futility is misplaced.**

Next, it is well-recognized that "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing part there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986); see also *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). None of these factors are present in Plaintiff's request. Plaintiff contends as follows:

First, amending the complaint would not cause prejudice to the opposing parties. "[T]he Fourth Circuit has very narrowly defined prejudice sufficient to overcome the liberal standard for granting amendments." *Next Generation Group, LLC v. Sylvan Learning Centers, LLC*, 2012 WL 37397 at *5 (D. Md. Jan. 5, 2012). Moreover, "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing," for example, an amendment "that raises a new legal theory that would require the gathering and analysis of facts not already considered by the Defendant and is offered shortly before or during trial." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (internal quotation marks, alterations, and citation omitted).

Second, Plaintiff has acted in good faith in seeking to amend the operative complaint. As this Fourth Circuit has recognized, bad faith "is a difficult term to define," but "[i]t may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules—you can imagine cases where a party just wants to cause chaos—or it might be something as mundane as noticing someone's mistake and saying nothing about it." *MedCom Carolinas,* 42 F.4th at 198. Plaintiff did not request leave to amend for reasons of deception, misdirection, or any other reason suggesting bad faith because he said he wanted to amend the complaint after the court adjudicates the complaint.

Third, reject the district court's reasoning that amending the complaint would not be futile (A27-A28; ECF No. 78, pp.11-12) "Determining whether amendment would be futile does not involve an evaluation of the underlying merits of the case." *Kolb v. ACRA Control, Ltd.,* 21 F. Supp. 3d 515, 522 (D. Md. 2014) (internal quotation marks omitted).

Accordingly, Plaintiff requests that this Court grant his request/motion seeking leave to file an Amended Complaint.

**C) <u>Legal Arguments & Discussions In Support Of Issue No.2</u>**

WHETHER the District Court erred or abused its discretion when it failed to address Plaintiff's statutory and common law retaliation claims under COUNT ELEVEN and COUNT FOURTEEN of Plaintiff's Amended Complaint (ECF No.20).

As a threshold matter, it is noteworthy that the district court's opinion is totally silent about Plaintiff's retaliation claims in Plaintiff's operative complaint and the opposition briefs regarding COUNT ELEVEN (ECF No.20, pp.68-70; ECF No.64, pp.105-109) and COUNT FOURTEEN (ECF No. 20, pp.73-78; ECF No. 64, pp.110-113).

This court can correct the district court's oversight or error by using the principle of party presentation, *supra*, *Wideman*, n. 3. Our U.S. Supreme Court has said that "[t]he Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness…of judicial proceedings.'" See *United States v. Olano* (91-1306), 507 U.S. 725 (1993) (omissions added).

Even if it can be inferred that the district court dismissed Counts 11 &14 for the same reasons about injury, Plaintiff contends that reversal is necessary because it is abuse of discretion for the district court to think that just because Plaintiff graduated from Walden University with so-called high marks excuses the University from the alleged common law and statutory retaliation. The alleged retaliation itself is an Article III injury.

## VIII.  CONCLUSION

For all foregoing reasons and the reasons explicated in Plaintiff's ECF Nos. 20, 62 & 64 incorporated herein by reference, the District Court erred and/or abused its discretion when it granted Defendant's motion to dismiss (ECF No.43) Plaintiff's operative complaint under Fed. R. Civ. Proc.12(b)(1). Accordingly, the district court's order (ECF Nos.78 &79) should be reversed or vacated entirely.

## IX.  RELIEFS REQUESTED

Appellant respectfully requests the following reliefs from this circuit court:

1. Reverse and/or vacate the district court's final order (ECF Nos.78 &79) dismissing Plaintiff's operative complaint under Fed. R. Civ. Proc.12(b)(1) for further proceedings for Defendant to Answer the operative complaint; or adjudicate Defendant's Fed. R. Civ. 12(b)(6) motion.

2. Reverse and/or vacate entirely the district court's final order (ECF Nos.78 &79) denying Plaintiff's request to amend the operative complaint.

3. Any other relief that this honorable circuit court finds equitable, just, and necessary.


Respectfully Submitted,

Michael O. Livingstone, *pro se*
P.O. Box 34246
Philadelphia, Pennsylvania 19101.
Email: mikeliving40@gmail.com
Telephone: 856-676-6951


Dated: May 8, 2024

## X. CERTIFICATION OF COMPLIANCE WITH WORD COUNT

I, Michael O. Livingstone, *pro se,* hereby certify the following to the best of my ability and knowledge that excluding the portions exempted from counting under Circuit Rule 32(f) and FRAP 32(a) as in *Vermillion v. Corizon Health, Inc*., 906 F.3d 696 (7th Cir. 2018):

1)    All required components of this principal informal appellant brief described by current edition of this Fourth Circuit Handbook, are present in this brief.

2)    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fourth Circuit Rule and Fed. R. App. P.32 (a)(6) because this brief has been produced using Times New Roman, 12 point, a proportionately spaced typeface.

3)    This informal Appellant brief complies with number of lines limitations in this Fourth Circuit Court.

4)    This informal appellant brief may not in good-faith comply with type-volume limitation of Fed. R. App. P.32(a) (7) (B)(i) because it uses a monospaced face and contains more than 809 lines of text.

5)    The loose hard copy version to be filed and the fifteen (15) hardbound copies version will be printed from PACER electronic docket as true identical copies for the court.

6)    Plaintiff states that all required materials are in the Appendix to his understanding.

Respectfully Submitted,

Michael O. Livingstone, *pro se*
P.O. Box 34246
Philadelphia, Pennsylvania 19101.
Email: mikeliving40@gmail.com
Telephone: 856-676-6951

Dated: May 8, 2024.

## Word Count

Statistics:

| | |
|---:|:---|
| Pages | 30 |
| Words | 9,228 |
| Characters (no spaces) | 49,842 |
| Characters (with spaces) | 59,014 |
| Paragraphs | 154 |
| Lines | 738 |

☑ Include footnotes and endnotes

Close

## XI. CERTIFICATE OF SERVICE

I, Michael O. Livingstone, hereby state that around May 8-9, 2024, I submitted

Appellant's Informal Brief and Appendix Volume I of I with this Court for filing. Thereafter, I

caused the same to be electronically served upon Defendant's Attorneys of record as follows:

Chris Bayh, Esquire
Barnes &Thornburg , LLP
11 S. Meridian Street
Indianapolis, Indiana 46204
Email: Chris.Bayh@btlaw.com

&
Christopher Michael Finke, Esquire
The Warehouse at Camden Yards
323 W. Camden Street, Suite 700
Baltimore, Maryland 21201
Email: christopher@lawrencelawllc.com

Respectfully Submitted,

Michael O. Livingstone, *pro se*
P.O. Box 34246
Philadelphia, Pennsylvania 19101.
Email: mikeliving40@gmail.com
Telephone: 856-676-6951

Dated: May 8, 2024